UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF BETTE DAVIS and CMG WORLDWIDE INC., <br>     *Plaintiffs*, <br>     *vs.* <br> ERICKSON BEAMON, LTD., <br>     *Defendant.* | ) <br> ) <br> ) <br> )  1:12-cv-01687-JMS-DKL <br> ) <br> ) <br> ) <br> ) |

## ORDER

Presently pending before the Court is Defendant Erickson Beamon, Ltd.'s ("Erickson") Motion to Dismiss or, in the Alternative, to Transfer the Case. [Dkt. 19.] Erickson argues that it is not subject to personal jurisdiction in Indiana so dismissal, or in the alternative transfer to the Southern District of New York, is proper. For the following reasons, the Court determines that it is appropriate to transfer this action to the Southern District of New York, where another, earlier-filed lawsuit between these parties is already pending. Accordingly, it will not address the merits of Erickson's argument that Plaintiffs the Estate of Bette Davis' (the "Estate") and CMG Worldwide Inc.'s ("CMG") claims against it should be dismissed.

**I.**
**BACKGROUND**

### A. The New York Action

On June 20, 2012 – nearly six months before the Estate and CMG initiated this lawsuit – Erickson sued the Estate and CMG in the United States District Court for the Southern District of New York. [Dkt. 20-1 (*Erickson Beamon Ltd. v. CMG Worldwide, Inc. and the Estate of Bette Davis*, 12 CIV 5105 (the "New York Action")).] In the New York Action, Erickson seeks a declaration that using the names "Bette Davis" or "Bette Davis Eyes" in connection with its jewelry

collection: (1) does not infringe on the Estate's or CMG's trademark rights, [*id.* at 6-7, ¶¶ 31-37]; (2) does not violate the Lanham Act, 15 U.S.C. § 1125(a), [*id.* at 7-8, ¶¶ 38-43]; and (3) does not infringe on the Estate's or CMG's rights of publicity, [*id.* at 8-9, ¶¶ 44-50].

### B. The Indiana Action

On November 16, 2012, the Estate and CMG filed a Complaint for Damages and Injunctive Relief in this Court against Erickson. [Dkt. 1.] The Estate and CMG then filed the operative Second Amended Complaint for Damages and Injunctive Relief on January 27, 2013, adding two additional defendants.[1] [Dkt. 14.] In the Second Amended Complaint, the Estate alleges that it is "the exclusive owner of the name, likeness, image, voice, right of publicity and endorsement, trademarks, copyrights, and other intellectual property rights…of the late internationally recognized movie star, Bette Davis…." [*Id.* at 2, ¶ 2.] Additionally, they allege that CMG is "in the business of representing corporations, organizations, celebrities, and the heirs, families, and estates of deceased celebrities, as their agent for the purpose of licensing to third parties permission to commercially use such corporations' and organizations' designs, trademarks, trade dresses…and other rights associated therewith." [*Id.* at 2, ¶ 3.] They further allege that Erickson is "in the business of designing, manufacturing, marketing, retailing, and distributing jewelry in over 600 stores in seventy-five nations around the world." [*Id.* at 2, ¶ 4.]

The Estate and CMG allege that Erickson has sold products which infringe on the Estate's and CMG's intellectual property rights related to Bette Davis. They assert claims against Erickson for: (1) violation of the Indiana State Statutory Right of Publicity Law, I.C. § 32-36-1-

---

[1] The Estate and CMG also sued Barney's, Inc. and Sugar, Inc. (whose correct name is Popsugar, Inc.). The Estate and CMG have now settled with both of those entities, and Erickson is the only defendant that remains. Accordingly, any arguments the Estate, CMG, or Erickson have made relating to the effect that transfer of this case would have on Barney's, Inc. or Popsugar, Inc. are now irrelevant.

8, [*id.* at 10-11, ¶¶ 40-46]; (2) violation of the California State Statutory Right of Publicity Law, Cal. Civ. Code 3344, [*id.* at 11-12, ¶¶ 47-52]; (3) "other statutory and common law rights of publicity," [*id.* at 12-13, ¶¶ 53-58]; (4) unfair competition under 15 U.S.C. § 1125(a), [*id.* at 13-14, ¶¶ 59-66]; (5) common law unfair competition, [*id.* at 14-15, ¶¶ 67-71]; (6) unjust enrichment, [*id.* at 15, ¶¶ 72-75]; (7) conversion, [*id.* at 15-16, ¶¶ 76-79]; (8) deception, [*id.* at 16-17, ¶¶ 80-85]; and (9) violation of the Indiana Crime Victims Act, Ind. Code § 34-24-3-1, [*id.* at 17, ¶¶ 86-90]. They seek an injunction enjoining Erickson from future unauthorized use of their intellectual property rights, an order directing the surrender of all materials relating to their intellectual property rights, damages, and attorneys' fees and costs. [*Id.* at 18-19.]

### C. Dueling Motions to Dismiss or Transfer

On December 17, 2012 – one month after initiating this lawsuit – the Estate and CMG moved to dismiss the New York Action or, in the alternative, to transfer it to this Court or to stay it pending the outcome of this litigation. [Dkt. 34-2.] In the motion, the Estate and CMG argued among other things that the New York Action is duplicative of this case and should be dismissed even though it was filed first, or in the alternative that the New York Action should be transferred to this Court. [*Id.*] Shortly thereafter, Erickson filed a motion to enjoin prosecution of this case in the New York Action. [*See* dkt. 28 in the New York Action.]

On March 18, 2013, Erickson moved to dismiss this case or, in the alternative, to transfer it to the United States District Court for the Southern District of New York. [Dkt. 19.] That is the motion currently pending before this Court.

### D. Denial of the Motion to Dismiss, Transfer, or Stay in the New York Action

On September 25, 2013, the New York Court denied the Estate's and CMG's motion to dismiss, transfer, or stay and denied Erickson's motion to enjoin this action. [Dkt. 55-1.] The

New York Court found that: (1) dismissal was not warranted because the New York Action was filed first and Erickson's choice of New York as a forum was not forum shopping, the lawsuit was not improperly anticipatory, and the fact that the New York Action only seeks a declaratory judgment is not significant, [*id.* at 10-14]; (2) transfer was inappropriate because this Court does not have personal jurisdiction over Erickson, [*id.* at 17-21]; and (3) enjoining this lawsuit was not warranted, [*id.* at 22].

On October 1, 2013, this Court ordered the Estate and CMG to show cause why it should not respect the findings of the New York Court and dismiss their claims against Erickson for lack of personal jurisdiction. [Dkt. 56.] The Estate and CMG responded by reiterating many of the arguments they raised in response to Erickson's Motion to Dismiss, and noted that they have moved the New York Court to reconsider its denial of the motion to dismiss. [Dkt. 64.] The Estate and CMG noted, however, that "CMG would accept transfer of this action to another jurisdiction where CMG has both been damaged and/or [Erickson] has contacts. The most likely venues for transfer could be the Southern District of New York or the Central District of California." [*Id.* at 6.] Erickson replied by re-stating its arguments that this Court does not have personal jurisdiction over it, and arguing that transfer of this case to New York would be appropriate if the Estate and CMG withdraw their pending motion for reconsideration in the New York Action. [Dkt. 65.] On November 12, 2013, the New York Court denied the Estate's and CMG's motion to reconsider its denial of the motion to dismiss. [Dkt. 66-1.]

This Court has not yet issued any substantive orders regarding the merits of this case.

## II.
### APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a). The Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice. *No Baloney Mktg., LLC v. Ryan*, 2010 U.S. Dist. LEXIS 30296, *26-35 (S.D. Ind. 2010). The moving party bears the burden of showing that transfer will "serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Id.* at *26. Federal district courts, however, have the inherent power to administer their dockets so as to conserve scarce judicial resources. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

In the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[2] Moreover, 28 U.S.C. § 1404(a) "permits a flexible and individualized analysis" and "affords the district courts the opportunity to look beyond the narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978. This Court is "grant[ed] a substantial degree of deference…in deciding whether transfer is appropriate." *Id.*

---

[2] Applying the law of the Fifth Circuit, the Federal Circuit labeled *Coffey*'s "strong statement" about the independent considerations of judicial economy as dicta. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta – a question not considered in *In re Vistaprint* – the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g., Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey* / *Research Automation* anytime soon. This Court will act accordingly.

## III.
### DISCUSSION

Erickson asks this Court to dismiss this action for lack of personal jurisdiction. Specifically, Erickson argues that it is not subject to personal jurisdiction in Indiana because the only bases for personal jurisdiction here are that its website is accessible in Indiana, and that "alleged-but-unnamed 'distributors and retailers that do business and/or exist in the State of Indiana'" cause the Estate's and CMG's goods to be sold, marketed, advertised for sale, and offered for sale in Indiana, and both of those bases are inadequate. [Dkt. 20 at 3 (quoting dkt. 14 at 4, ¶ 11).] In the alternative, Erickson requests that the case be transferred to the Southern District of New York because the convenience of the witnesses and parties favors transfer, the location of material events is in New York and not Indiana, and the New York Action was filed first. [*Id.* at 8-10.]

In response, the Estate and CMG argue that the Court has personal jurisdiction over Erickson for a number of reasons, making dismissal inappropriate. [Dkt. 33 at 7-16.] They contend that transfer is not proper because their choice of venue should be given substantial deference, the easy access by all parties to evidence in Indiana weighs in favor of denying transfer, convenience of the witnesses weighs against transfer, and the interests of justice weigh against transfer. [*Id.* at 20-25.] Erickson replies by reiterating both its personal jurisdiction and transfer arguments. [Dkt. 35 at 4-8.]

Given its potentially dispositive nature, the Court will begin with a discussion of the interest of justice before considering the relative convenience of the parties and the witnesses of the two venues.

### A. Interest of Justice

As a separate element of the transfer analysis, the interest of justice considers "the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978 (citation omitted). Typically, courts evaluating this element "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citation omitted).

The speed-to-trial factor favors transfer to the Southern District of New York. According to the most recent figures from the Administrative Office of the United States Courts, civil actions in the Southern District of New York waited 26.6 months from filing to trial, while the median in this District was 36.2 months.[3] This nearly ten-month difference is significant.[4] Additionally, the New York Action already includes requests for declarations regarding Erickson's alleged violation of trademark law, making consolidation with this action likely and highly efficient.

As for each District's relative familiarity with governing law, that consideration only slightly weighs against transfer. Federal law governs at least some of the claims, making either Indiana or New York an appropriate forum. The existence of two claims under Indiana statutes slightly weighs against transfer, *see, e.g., Coffey*, 796 F.2d at 221 ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law" (citation omitted)), however the Court is confident that the New York Court can apply

---

[3] http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-june-2013.pdf&page=1 (last accessed December 4, 2013).

[4] The Estate and CMG submitted older statistics which indicated a small difference of a little over one month from filing to trial. [*See* dkt. 34-5 at 11, 51.] The Court will rely on the more recent figures, which were published after the Estate and CMG responded to the motion to dismiss.

Indiana law effectively to those claims. *See Heckler & Koch, Inc. v. Tippman Sport, LLC*, 2009 U.S. Dist. LEXIS 116306, *8 (S.D. Ind. 2009) (transferring trademark case to Utah (where related action was pending), even where Indiana law would apply to some claims, because "any federal district court will be equally capable of resolving the relatively uncomplicated types of claims asserted in this case, even those involving Indiana law"). The Court also notes that the Estate and CMG assert a claim under California statute (violation of the California State Statutory Right of Publicity Law, Cal. Civ. Code 3344), with which neither this Court nor the New York Court would be familiar, but which each could competently apply.

The third consideration, "the respective desirability of resolving controversies in each locale," *Research Automation*, 626 F.3d at 978, strongly favors transfer. Judicial economy is advanced by transferring this matter so the Southern District of New York can consolidate this matter with the first-filed New York Action and consider the trademark-related claims in the same litigation.[5] A transfer and consolidation would enable discovery to be better coordinated between the parties, and would enable the magistrate judge there to explore a global settlement between the parties. A transfer would also eliminate the possibility of inconsistent judgments regarding any trademark infringement issues.

Finally, regarding the relationship that the community of each venue has to the controversy, this factor is a wash. Indiana has an interest in ensuring that corporations headquartered here

---

[5] The Estate and CMG argue that Erickson's filing of the New York Action before this one should be given "very little weight" because the New York Action is a declaratory judgment action and Erickson "race[d] to the courthouse in New York and filed the New York Action solely to give it the upper hand in venue selection…[, which] should not [be] reward[ed]." [Dkt. 33 at 25.] The Court rejects that argument, and notes that there is no evidence that Erickson improperly engaged in forum shopping nearly six months before this suit – especially where, as here, the plaintiff in the first-filed suit has filed in its home state. [*See also* Dkt. 55-1 at 10-14 (in rejecting the same argument, the New York Court stated "[i]n sum, absent their reliance on the threat of litigation argument rejected above, [the Estate and CMG] offer no special circumstances warranting an exception to the first-filed rule here").]

like CMG receive the protections afforded them under Indiana law. New York, home to Erickson, has an interest in ensuring that corporations headquartered there receive the protections they are entitled to under trademark law, but also that its corporations comport with applicable laws.

Given the strong desirability of having both this case and the New York Action pending in the same district in order to promote judicial efficiency and foreclose the possibility of inconsistent judgments, the fact that the speed-to-trial factor weighs in favor of transfer, and the neutrality or relative weakness of the remaining considerations, the Court finds that the interest of justice strongly supports a transfer to the Southern District of New York.

### B. Convenience of the Parties and Witnesses

The second branch of the transfer analysis considers the "convenience of parties and witnesses." 28 U.S.C. § 1404(a). Factors relevant to this "convenience" inquiry include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 U.S. Dist. LEXIS 98674, *10-11 (S.D. Ind. 2006) (citation omitted).

The Court finds that the Estate's and CMG's choice of forum, Indiana, should be given less deference when the only connection is that the *agent* (CMG) for the real party in interest (the Estate) is headquartered there. *See, e.g.*, *CMG Worldwide, Inc. v. Upper Deck Co.*, 2008 U.S. Dist. LEXIS 85497, *14 (S.D. Ind. 2008) (transferring case where only connection to Indiana was that CMG was headquartered there, and CMG was "merely acting as an agent for the estates of these players, so its location is not material"). Additionally, the operative facts here have little or no connection with the chosen forum. *See MPH Techs. Oy v. Zyxel Communs. Corp.*, 2010 U.S. Dist. LEXIS 72893, *5 (N.D. Ill. 2010) ("[W]here the plaintiff's choice of forum has a rela-

tively weak connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened"). While the Estate and CMG allege that infringing products were sold by distributors or retailers of Erickson in Indiana, [*see, e.g.*, dkt. 14 at 4, ¶ 11], Erickson represents that it does not conduct any business in Indiana, does not target any of its activities at Indiana, and has not sold any of its Bette Davis Eyes product line in Indiana, [dkt. 21 at 2-3, ¶¶ 5-6, 8]. Moreover, the key issues in this case will relate to Erickson's marketing, advertising, and distributing of the allegedly infringing products – all of which presumably occurred in New York and not in Indiana. The operative facts here have a weak connection to Indiana and, for that reason, the Court gives little deference to the fact that the Estate and CMG chose to sue here.

The situs-of-material-events factor weighs in favor of transferring this case. While the Estate and CMG argue that distributors and retailers of Erickson's products offered infringing products for sale in Indiana, they have not alleged that Erickson researched, designed, developed, or manufactured the allegedly infringing products in Indiana – all key inquiries for the venue analysis in a trademark-related case. Indeed, Erickson argues that it has its showroom in New York, conducts its business in New York, and designed the allegedly infringing jewelry in New York. [Dkts. 20 at 9; 21 at 1-2, ¶¶ 3-4, 9.] The Estate and CMG do not dispute this. And to the extent that the Estate and CMG argue that the Estate suffered injury in Indiana, thus making it the situs of material events, the Court rejects that argument. *See CMG Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 98674 at *12-13 (the fact that some injury may have occurred in Indiana "proves too much. It would mean that plaintiffs could force defendants from anywhere to defend themselves in Indiana against plaintiffs' claims to have worldwide exclusive rights to Marilyn Monroe's right of publicity"). The situs-of-material-events factor weights in favor of transfer.

The third factor, ease of access to sources of proof, is neutral. CMG argues that "all of the licensing and infringement enforcement activities conducted on behalf of the Estate by CMG are conducted in this district or in the Southern District of California…[so] the evidence and witnesses necessary to CMG to prosecute this action for infringement against [Erickson] are located within this judicial district." [Dkt. 33 at 20 n.6.] Although the parties do not address it, Erickson's sources of proof are presumably in New York, where it is headquartered. As the Estate and CMG stated, this factor is a wash "[i]n this age of information technology [where] documents can be transferred from place to place via electronic and other means." [*Id.* at 21.]

As for the convenience of witnesses, this factor is also neutral. Erickson claims that Indiana is inconvenient for it since it is located in New York, argues that New York would likely be more convenient for the Estate since it is located in Massachusetts, but acknowledges that New York would be less convenient for CMG which is located in Indiana. [Dkt. 20 at 9.] The Estate and CMG assert that Erickson has not identified any non-party witnesses located in New York that would otherwise be precluded from testifying if the case were to remain in this Court. [Dkt. 33 at 22.] Put simply, litigating here will force Erickson's witnesses to travel, litigating in New York will force CMG's witnesses to travel, and the Estate's witnesses will likely have to travel either way.

The final factor – convenience to the parties – is also essentially neutral. Erickson's argument that it is inconvenient to litigate here is equally applicable to CMG having to litigate in

New York, although it is likely more convenient for the Estate, being headquartered in Massachusetts, to litigate in New York.[6]

In summary, the Court gives little deference to the Estate's and CMG's choice of forum, even though CMG is an Indiana corporation, due to CMG's position as the Estate's agent. Additionally, their forum choice is afforded little weight because the Estate is located in Massachusetts and the forum has a very weak connection with the operative facts. Significantly, the case will likely be resolved faster in the Southern District of New York, and considerations of convenience to the witnesses and the parties, as well as the other convenience factors, are neutral. While transfers should not ordinarily "merely shift[] inconvenience from one party to another," *Research Automation*, 626 F.3d at 978, a transfer to the Southern District of New York will allow for a full and speedier resolution of all matters disputed in both cases, and foreclose the possibility of inconsistent judgments related to Erickson's activity. The Court finds that the "interest of justice" factors weigh heavily in favor of transferring this matter to the Southern District of New York.[7]

## IV.
### CONCLUSION

Transferring this action to New York would strongly promote the interest of justice. Under the circumstances, transfer is "clearly" proper, *Coffey*, 796 F.2d at 220 (citation omitted).

---

[6] As required for transfer under 28 U.S.C. § 1404(a), the Court also finds that this matter could have originally been brought in the Southern District of New York since that court clearly has personal jurisdiction over Erickson, which is a New York corporation with its principal place of business in that district, [dkt. 14 at 2, ¶ 4].

[7] Because the Court is transferring this matter, it has not considered – and need not consider – whether it has personal jurisdiction over Erickson. *See Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) ("[U]nder 1404(a)…, the transferring court need not have personal jurisdiction over the defendants"). It notes, however, the finding by the New York Court that Erickson has not had sufficient contacts with Indiana to support this Court's exercise of personal jurisdiction here. [Dkt. 55-1 at 17-21; *see also* dkt. 66-1.]

The Court therefore **GRANTS** the portion of Erickson's Motion to Dismiss or, in the Alternative, to Transfer the Case, [dkt. 19], that requests transfer of this case to the United States District Court for the Southern District of New York.  Additionally, the Court **DENIES AS MOOT** the portion of Erickson's Motion to Dismiss or, in the Alternative, to Transfer the Case, [dkt. 19], that requests dismissal based on lack of personal jurisdiction.  The Clerk is directed to **TRANSFER** this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Any previously ordered dates and deadlines are **VACATED** and any pending motions not addressed above are **TERMINATED**.

12/04/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Jeffrey Sonnabend
SONNABEND LAW
jsonnabend@sonnabendlaw.com